IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GEORGE R. HARKER, | ) CIVIL NO. 09-00454 JMS/LEK |
| | ) |
| Plaintiff, | ) ORDER AFFIRMING THE SOCIAL |
| | ) SECURITY ADMINISTRATION'S |
| vs. | ) DENIAL OF BENEFITS TO |
| | ) PLAINTIFF GEORGE R. HARKER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER AFFIRMING THE SOCIAL SECURITY ADMINISTRATION'S DENIAL OF BENEFITS TO PLAINTIFF GEORGE R. HARKER**

**I. INTRODUCTION**

Plaintiff George R. Harker ("Plaintiff") appeals Defendant Michael J. Astrue, Commissioner of Social Security's ("Defendant") adoption of Administrative Law Judge Benjamin Parks' ("ALJ Parks") January 28, 2009 decision finding Plaintiff not disabled under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f (the "January 28 Decision"). Plaintiff argues that the January 28 Decision must be overturned because it is not based on substantial evidence and the record is incomplete. Based on the following, the court AFFIRMS the Social Security Administration's denial of benefits to Plaintiff because the January 28 Decision is supported by substantial

evidence and ALJ Parks did not breach any duty to further develop the record.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff, born on September 26, 1943, completed BA and MA degrees at Ohio State University, and in 1974, he received a Ph.D in Recreational Resource Management from Texas A&M University.  Record on Appeal ("ROA") at 31, 168.  From 1970 through 1991, Plaintiff worked as a professor in the Department of Parks and Recreation at Western Illinois University.  ROA at 32, 168.  Plaintiff also published articles in professional journals, wrote a book, and created the website "Dr. Leisure."  ROA at 168.

Plaintiff moved to Hawaii in 1996.  In 1998, Plaintiff began working as a substitute teacher for the State Department of Education ("DOE"), and except for the summer of 2001, Plaintiff held this job through April 1, 2002.  ROA at 32, 115.  Plaintiff subsequently applied and was rejected for unemployment benefits.  ROA at 166.  After Plaintiff stopped working in April 2002, Plaintiff asserts that his insomnia, memory impairment, and depression prevented him from working on a full-time basis.  ROA at 32.  Since this time, Plaintiff asserts that he has worked only odd jobs and considers himself a self-employed writer/publisher.  ROA at 32, 43.

Plaintiff filed for Social Security and Disability Insurance benefits on May 25, 2006, alleging disability since April 1, 2002. ROA at 20, 139. After Plaintiff's application was denied, Plaintiff requested a hearing. A hearing was conducted on October 16, 2008 in which Plaintiff and vocational expert Brenda Cartwright testified. Including the information summarized above, the evidence before ALJ Parks relevant to this appeal includes the following:

### 1.     *Plaintiff's Testimony and Statements*

Plaintiff testified that he stopped working as a substitute teacher because he cannot stay awake during the day, has memory problems, and cannot stay focused on tasks. ROA at 32. Plaintiff speculated that perhaps these problems were due to his blood pressure medication, but noted that his doctor -- who he had not seen since 2006 -- attributed these problems to old age.[1]  *Id.*  Plaintiff further explained that he is depressed, likely due to dealing with the demands of several lawsuits he instituted, including one against the DOE for failing to hire him full time. ROA at 34-35, 166.

Plaintiff testified that he has slept in his pickup truck for the past five

---

[1] Plaintiff's medical records from Kaiser Medical Center indicate that Plaintiff was prescribed hypertensive medications for elevated blood pressure with no adverse side-effects, and underwent operative repair of an umbilical hernia. ROA at 237-40, 282, 291, 294. Because Plaintiff asserts disability based on his depression and there is no evidence that these medical issues relate to his depression and/or any alleged disability, the court focuses on the evidence regarding Plaintiff's mental health only.

years, eats most of his meals at St. Teresa's Catholic Church, and spends his days at McKenna State Park.  ROA at 39.  On a typical day, Plaintiff walks on the beach, sleeps during the afternoon, and accesses the internet in his truck.  *Id*.  In a written statement, Plaintiff further asserted that he wears the same clothes, bathes infrequently, neglects his personal hygiene, and does little food preparation beyond making sandwiches.  ROA at 132-33.  Plaintiff has also admitted that he is "comfortable" with his lifestyle but in order to survive needs financial assistance.  ROA at 138.

### 2. *Dr. McNamara's Psychological Evaluation*

On March 1, 2003, Kathleen McNamara, Ph.D ("Dr. McNamara") performed a psychological consultative evaluation of Plaintiff to determine his psychological status for his claim for disability benefits from the State of Hawaii Department of Human Services ("DHS").  ROA at 165.  Dr. McNamara described Plaintiff as alert, oriented, and fully cooperative.  *Id*.  In addition, Dr. McNamara reported that Plaintiff's attention and concentration were within normal limits, his speech was fluent, his problem-solving strategies were good, and his thought process appeared coherent and logical.  *Id*.

Based on Plaintiff's alleged lack of energy, disruptive sleep, and lack of desire to carry out routine activities, Dr. McNamara diagnosed Plaintiff with

"(1) Adjustment Disorder with Depressed Mood; (2) Insomnia secondary to emotional distress; (3) R/O Cognitive Disorder, NOS."  ROA at 169.  Dr. McNamara found that Plaintiff's depressive symptoms were situational in nature and would lift if he were employed in a meaningful occupation.  ROA at 170.  As for work, Dr. McNamara found that Plaintiff could understand simple oral directions and instructions, and would have minimal to no problems with co-workers and supervisors.  ROA at 169.

In addition to these findings, Dr. McNamara's records include, among other things, the Social Security Administration "Psychiatric Review Technique Form" SSA-2506-BK, which indicates that Plaintiff had only mild functional restrictions on activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and there was insufficient evidence of episodes of decompensation.  ROA at 161.

### 3.   *Dr. Schumacher*

Lance Schumacher Ph.D ("Dr. Schumacher"), a mental health provider, saw Plaintiff nine times between August 2005 and July 2006.  ROA at 171.  In a July 12, 2006 report, Dr. Schumacher diagnosed Plaintiff with depressive disorder, episodic/improved, and mild memory impairment.  *Id.*  Dr. Schumacher found that Plaintiff was not interested in therapy or medication for these issues, but

instead was primarily interested "in compliance to get DHS assistance & SSI." ROA at 172. Plaintiff expressed to Dr. Schumacher that he had thoughts of suicide if he were denied Social Security benefits, and asserted that he would continue to report these thoughts during the pendency of his application for benefits even though he was not presently feeling suicidal. ROA at 179.

Dr. Schumacher reported that Plaintiff did not have mental impairments or alleged memory problems that would significantly interfere with his ability to engage in work activity -- Dr. Schumacher found that Plaintiff could understand and remember simple work instructions, maintain regular job attendance, get along with others, and could adapt and cope with a low-demand, entry-level job. ROA at 173-74. Dr. Schumacher further found that Plaintiff could perform activities of daily living and that Plaintiff's mental condition did not impact Plaintiff's interests or ability to relate to others. ROA at 173.

After July 2006, Dr. Schumacher met with Plaintiff two more times, and Plaintiff again complained of insomnia and memory impairment. ROA at 296-98. In the first meeting, Dr. Schumacher determined that Plaintiff was stable with no symptoms of depression or suicide ideation and thus discharged Plaintiff on August 8, 2006. ROA at 296, 298. On December 20, 2006, Plaintiff returned to request a treatment plan in order to qualify for DHS assistance, yet Plaintiff

admitted that he was doing fairly well and his energy and interest level appeared adequate. ROA at 296-97.

B.     **Procedural Background**

On January 28, 2009, ALJ Parks issued his decision finding Plaintiff not disabled. ROA at 20-26. The Appeals Council subsequently rejected Plaintiff's request to review the January 28 Decision, and the January 28 Decision became the final decision of the Commissioner on June 24, 2009. ROA at 9.

On September 24, 2009, Plaintiff filed his Complaint seeking judicial review of the January 28 Decision. On January 22, 2010, Plaintiff filed his Opening Brief, and on March 29, 2010, Defendant filed its Answering Brief. Pursuant to Local Rule 7.2(d), the court finds the issues presented suitable for disposition without a hearing.

### III.  STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g). In reviewing findings of fact with respect to such determinations, the court must uphold the Commissioner's decision, made through an ALJ, "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence

is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation and internal quotation marks omitted). "Where the evidence can reasonably support either affirming or reversing the decision, [the court] may not substitute [its] judgment for that of the Commissioner." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). With that said, however, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Ryan*, 528 F.3d at 1198 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## IV.  DISCUSSION

Disability insurance benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled only if his impairments are of such severity that he is unable to do his previous

work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established a five-step sequential analysis to assess disability claims, which asks:

> (1) Is the claimant presently working in a substantially gainful activity?  If yes, the claimant is "not disabled."
> (2) Is the claimant's impairment severe?  If no, the claimant is "not disabled."
> (3) Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If yes, the claimant is "disabled."
> (4) Is the claimant able to do any work that he or she has done in the past?  If yes, the claimant is "not disabled."
> (5) Is the claimant able to do any other work?  If yes, the claimant is "not disabled."

*See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Id.* at 1098.

The January 28 Decision found that Plaintiff did not carry his burden on step two showing that he has a severe impairment.  ROA at 20-26.  While not entirely clear, Plaintiff appears to assert that the evidence was insufficient for ALJ Parks to find that Plaintiff lacked a severe impairment and that ALJ Parks should

9

have gathered and considered additional evidence.  The court first determines whether the January 28 Decision is supported by substantial evidence and then determines whether ALJ Park had an obligation to further develop the record.

**A.    Evidence Supporting the Step Two Determination**

In performing the step two inquiry of whether Plaintiff's mental impairment is severe, the January 28 Decision had to determine Plaintiff's degree of limitation in four broad areas -- daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  If the degree of limitation in these four areas is determined to be "none" or "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.  *See* 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d).  An impairment may be found "not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2006) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The January 28 Decision considered each of these four functional areas, finding that Plaintiff has mild limitations in daily living, social functioning, and concentration, and has had no episodes of decompensation.  These findings are

supported by substantial evidence on the record. Form SSA-2506-BK, the Psychiatric Review Technique Form, indicates that Plaintiff was rated as "mild" in the first three functional areas and there was "insufficient evidence" in the fourth area. ROA at 161. Dr. McNamara further found that Plaintiff's attention and concentration were within normal limits, Plaintiff could understand simple instructions, and Plaintiff would have minimal problems with co-workers and supervisors. ROA at 165, 169; *see Magallanes v. Bowen*, 881 F.2d 747, 752-53 (9th Cir. 1989) (finding that the ALJ properly relied on the opinion of an examining consultative medical source because it constitutes substantial evidence). Finally, Dr. Schumacher's July 12, 2006 report is in agreement with Dr. McNamara's opinion, asserting that Plaintiff's mental condition did not impact Plaintiff's interests or ability to relate to others, and that Plaintiff could engage in basic work activities and perform activities of daily living. ROA at 173-74; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (explaining that "a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record").

    The only evidence that arguably counters the January 28 Decision that Plaintiff did not have a severe mental impairment is Plaintiff's own statements that

he suffers from insomnia, memory impairment, and thoughts of suicide.  This evidence, by itself, is insufficient for several reasons.

First, Plaintiff merely asserted general limitations, which is insufficient to establish disability.  *See Tackett*, 180 F.3d at 1099 ("A generalized assertion of functional problems is not enough to establish disability[.]").

Second, the January 28 Decision found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with finding that [Plaintiff] has no severe impairment or combination of impairments" due to the specific evidence to the contrary.  ROA at 24.  Given that there was detailed evidence from medical professionals contradicting Plaintiff's assertions, the January 28 Decision committed no error in discrediting Plaintiff's testimony.  *See Lingenfelter*, 504 F.3d at 1035-36 (finding that an ALJ can reject a claimant's testimony about the severity of his symptoms "by offering specific, clear and convincing reasons for doing so" (quotations omitted)).

Third, even taking Plaintiff's testimony at face value, there is still substantial evidence from his examining and treating psychologists that reflect no sustained symptoms consistent with Plaintiff's allegations of severe depression and thoughts of suicide.  Accordingly, the court finds that there is substantial evidence

on the record to support the January 28 Decision's conclusion that Plaintiff does not have a severe mental impairment.

## B.     Whether ALJ Park Had a Duty to Consider Additional Evidence

Plaintiff argues that evidence regarding his worker's compensation claim and DHS benefits would have supported his disability claim and that ALJ Parks should have collected and considered this evidence. The court disagrees that ALJ Parks had an obligation to further develop the record for Plaintiff.

"In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Despite this special duty, a plaintiff still has the duty to prove disability and must come forward with medical or other evidence supporting such claim. *Mayes*, 276 F.3d at 459 (citing 42 U.S.C. § 423(d)(5)). A claimant may not improperly shift his burden to the ALJ -- an ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459-60.

The evidence presented to ALJ Parks was not ambiguous -- Dr.

McNamara's evaluation and Dr. Schumacher's July 2006 report were consistent with each other, both finding that Plaintiff could engage in basic work activities. ROA at 169, 173-74.  Nor was this record inadequate -- ALJ Parks had reports from two different medical personnel, as well as Plaintiff's medical records.  As explained above, the evidence was sufficient for ALJ Parks to address the inquiries in the step two determination, and fully supports the conclusion that none of the inquiries suggest that Plaintiff has a severe impairment.  *See* ROA at 161; 273-74.

    Plaintiff proffered no contradictory evidence and did not describe this additional evidence with any detail to ALJ Parks.  Instead, Plaintiff basically contends that ALJ Parks should have taken it upon himself to develop the record for Plaintiff.  Under these circumstances -- *i.e.*, where Plaintiff failed to suggest that additional specific evidence could in fact prove a severe impairment -- the court finds that ALJ Park had no duty to further develop the record.  To find otherwise would place Plaintiff's burden of proving disability on ALJ Parks.  *See Duenas v. Shalala*, 34 F.3d 719, 722 (9th Cir. 1994) (finding that the ALJ did not violate her duty to develop the record where "[n]o request was made of the ALJ to develop the record, and it is unclear what further the ALJ could have done"); *see also Castaneda v. Astrue*, 344 Fed. Appx. 396, 399 (9th Cir. 2009) (finding that the ALJ did not err in failing to develop the record where the medical records were not

ambiguous or conflicting, and the record was adequate).

In sum, the court rejects that ALJ Parks failed any duty to further develop the record.

## V.  CONCLUSION

Based on the above, the court AFFIRMS the January 28 Decision finding Plaintiff not disabled.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 6, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Harker v. Astrue*, Civ. No. 09-00454 JMS/LEK, Order Affirming the Social Security Administration's Denial of Benefits to Plaintiff George R. Harker